Good morning, Your Honors, and may it please the Court, my name is Fernando Quinones. I represent the petitioner in this case who is challenging both the actual reinstatement order as well as the reinstatement regulations that authorized that order. The Court did instruct us to address those two issues, and so I'll begin with our challenges to the reinstatement order. The order fails to comply with the regulatory burden that it sets on the officer to establish the three predicate findings, the alienage of the person and identity, the existence of a prior removal order, and the unlawful reentry. On the face of the order, and together with the rest of documents that the government submitted as part of its foundation for issuing this order, it is clear that the government failed to establish the unlawful reentry. On the order, it states in line three that my client reentered September 21st, 2001 at or near Calexico, California. However, there is nothing in the records submitted by the government that supports that assertion. In fact, the documents submitted belie that statement. Included in the administrative record is the sworn statement that the officer took when beginning the reinstatement interview, and in that statement, the officer had to read certain warnings of the petitioner's rights in that proceeding. The first right is that he had the right to remain silent, and he exercised that right in accordance with the officer's instructions and advisal. That section on warnings also includes a statement that he has the right to be represented by counsel. Again, my client chose to assert his right to remain silent and did not answer any of the questions that the officer posed, and so there's no information in that statement about his manner, place, time of reentry. Additionally, the administrative record includes a form I-213, which is essentially the notes that the officer takes when making these determinations. In this section concerning his return, the officer wrote that the place and time of return were unknown. So, there's no evidence in the record to support the assertion that he returned on that date near Calexico, California. So, basically, the order is incorrect and invalid because, again, the regulations require the officer to make those determinations. The burden is on the officer and not on the respondent to establish those three predicates, and the officer failed to do that. The officer apparently searched only some of the records but did not obtain any information about the place, date, or manner of reentry. So, again, on that basis, we consider the document, the punitive reinstatement order, incorrect. To piggyback on the discussion that the court had earlier on whether a reinstatement order is final, I would read the language in the version of the reinstatement order that the government issued my client, which is similar but not identical to the one that Judge Wardlaw read just a minute ago. Prior to the signature by the agent, it states, in accordance with Section 241.85 of the Act, you are removable as an alien who has illegally reentered in the U.S. after having been previously removed or departed voluntarily while under an order of exclusion, deportation, or removal, and are therefore subject to removal by reinstatement of the prior order. So, this order is a finding of removability, and as the court has pointed out, without this order, an alien cannot be removed and would not be removed. The government would have no authority to force a person to leave or physically send them out themselves. So, this is an order of removal. But in addition to that error, I would like to point out several other mistakes and bizarre things in the documents that, again, undermine the validity of the order. So, one of the peculiar things is that the government submitted the original removal order from 2001. That order is directed to El Efren Velazquez-Reyes. My client's name is Efren Velazquez-Reyes. The order that the government submitted, that the officer issued at the border, which is at page three of the administrative record, and which is the basis for the reinstatement and what the government purports to try to reinstate, indicates the reason for the inadmissibility and deportability of this person, and then contains a signature of the subject. The signature is written, not signed, as you can tell from the reinstatement order and the notice of that that my client signed. He has a cursive signature. This person signed, not in handwriting, but a printed name. Again, Efren Velazquez-Reyes, which, again, is not my client's name, but also has a different spelling for the last name than the name on the top of the reinstatement order form. So, while we are not challenging that form in this petition, we are challenging the validity of the reinstatement order that purports to reinstate an order that is addressed to somebody else, and that contains a signature that looks essentially like a forgery. If you look at the— Council, can I, just to clarify, you're saying that you're not challenging that prior order, but you are—are you saying that that prior order is not—does not pertain to your client? What I'm saying is that the officer who issued the reinstatement order did not do the job he was required to by confirming that this order was a valid order that he could apply to this person, to Efrain. There's no note in any of the—in the I-213 or any of the other documents that the government submitted to show that this officer noted that difference, and that should have drawn questions and required further research to confirm that this order was valid. Again, given that it shows a signature that is not my client's and that likely was filled in by whoever prepared—or the person who prepared the order, as you can tell by the way that they write their E's. It's a similar E that the person who prepared this order writes when it says C, F-I-N-S, et cetera. So, the officer at the reinstatement— Oh, excuse me. Yes. I—so, your client was later granted withholding a removal in his reasonable fear proceeding. Correct. And are you challenging that? No, we are challenging the reinstatement order, not the withholding grant. So, is the withholding grant in the correct name? Is it—  My client's actual name, yes. Okay. This is kind of a strange posture. It is. And to summarize for the court, my client came in 2001. Sorry, he was here before that. He returned to Mexico in 2001. He was apprehended and issued disorder, at least from what I can tell based on the government's assertion that this is an order relating to him. He was issued disorder and returned to Mexico. He then returned later. He—the manner of his entry will also be important if we get to that point. But the—he returned later, and then in 2012, he filed for asylum in May of 2012. In July of 2012, he came to the attention of ICE through an arrest by the state for a non-disqualifying crime. He was transferred to ICE in July, and that's when ICE issued this reinstatement order. His asylum application, however, again, had already been filed in May. He had already complied with biometrics requirement, and so he had done everything he had to do to—in order for his right to apply for asylum to vest at that moment in May. And at the time that the reinstatement order was issued, he was—he had this protected vested right to have his asylum application adjudicated. The officer, however, initially in the Act of 2013, normally the officer has to check, and as required by the regulations, they have to check several databases to confirm all of the different factual requirements here. And the officer initial database check showed that there were no pending applications, which is not accurate. Later, the officer did note that he had an asylum application that was pending under a different number because immigration assigned him a different number, probably by mistake, but one of the many mistakes that the government has made in this case that led us to this long of a delay. After the reinstatement order, he was put in withholding proceedings. Initially, those were terminated by the judge who agreed with us that his asylum application had to be adjudicated. The asylum office refused to adjudicate it and sent it back to immigration court for withholding only proceedings again, at which point, after multiple reschedulings from the government, he was finally granted withholding in 2025. And then we filed the petition for review, given that the law at the time did state that we had to wait until the withholding decision in order for the reinstatement order to be considered final. So, in addition to this, all these issues in the record that undermine the validity of the order, as the officer informed my client, he had a right to review. I'm sorry, excuse me, counsel. Yes. So, I'm trying to figure out, are you arguing that the order wasn't final or it wasn't valid? I'm trying to... It's not valid because it does not contain, the government did not prove the manner of reentry or the date of reentry. The government also denied my client the right to have his attorney present. As mentioned, his application was filed in May, together with a notice of appearance of present counsel. So, had the officer done the correct database checks, he would have found my information and contacted me. So, my client could have had the right to be represented as the officer informed my client, but did not conduct... What is your position on the point of whether the petitioner re-entered after the issuance of his removal order? I'm not sure I understand the question. So, in your view, did your client re-enter after the issuance of the removal order? He did re-enter, but again, the manner of his re-entry has not been addressed and was not addressed during the reinstatement procedure because there are arguments that would indicate that the entry should not be protected. So, are you saying that you're going to... You're trying to argue because you say the manner of his re-entry. Are you trying to say that he re-entered legally? Yes. He... Or because... Look, it seems like we have to... If there's substantial evidence that supports that your client illegally re-entered after the issuance of the removal order, I'm not quite sure how you can be afforded relief here. So, Your Honor, there is no substantial evidence. As I mentioned, the only evidence that the government relied on, which is in the record, shows that there was no information as to the date of re-entry. And it is... The regulations, if they are still in place after this, do require the government to establish those facts. But he concedes or you concede that he re-entered after the reinstatement order, correct? I concede that he re-entered, yes, but I'm not conceding the date, place, time, or manner. That has never happened. Your Honor, I'm almost out of time, but we also would like the court to review the regulations that... The recent regulations that it is authorized to do and revisit its holding in Morales-Izquierdo under the current direction of the Supreme Court that requires the court to issue an independent judgment about whether these regulations are the best reading of the statute. They are not because they put multiple other sections in conflict. Some of it, which is in our brief already, but we would also ask the court to invalidate the regulations, not just the order. But then what happens to your withholding? You have a grant of relief. Correct. Is it withholding from... Is it Honduras? No, Mexico. Mexico. It's just withholding from... It can't be deported to Mexico. Correct. But as we have seen, the government can try to remove people to their countries who have withholding. So that is why we're asking for the reassignment order to be vacated so that there is no question about whether he is eligible also for asylum and to have his vested asylum application adjudicated finally. So you're worried that unless the reinstatement order is done, he will be deported to some third world country? Yes. Okay. I don't know how we make that determination. It seems like a factor of fact would have to make the factual determination. If this is a review that this court is authorized to do of the reinstatement order and whether it complies with the regulation and the burden of proof that the government has under that regulation. If the court does agree that those regulations are valid, then that would also undo the reinstatement order. But the court does have a right to review whether the government complied with its own regulations. And in this case, it did not. All right. Thank you. Thank you. May it please the court, Robert Tennyson for the government. Um, let's just go to the merits of this. I think there are jurisdictional issues. There are jurisdictional issues with the challenge to the reinstatement. We discussed that in other cases. I think there's one specific to this case, but let's just start with the merits. So the petitioner is complaining that his reinstatement order is invalid because the agency's statement of a particular time and place on the reinstatement order um is not justified by the record. But the petitioner exhausted, the petitioner failed to exhaust that challenge. There's a box that says, I do not challenge, do not wish to make a statement contesting this determination. He checked that. So all those three predicates, he could have made a statement. He could have come in and said, I did not enter unlawfully on that date, or I did not enter unlawfully at all, but he did not. And because he did not exhaust it, this court can't consider that issue. Is there a concern that, and I'm not sure I'm totally tracking counsel's argument, that it may not have been his client? It may not have been. His client. His client. So, right. He's made that argument. Now, um, I'd start by looking at pages eight of the record, um, where it lists, this is the, this is the run of the fingerprints, right? Um, and it runs the fingerprints under the name Vasquez, Efren Vasquez Reyes. It pops up another name, and the other name is Efren Velasquez Reyes. So he's been using another name. The thing is, is that it's not that the agency got it wrong. It's that the petitioner in this has been using multiple identities. Um, and he was only found out when he was arrested, and then his order was reinstated by the DHS, by the department. Um, and he could have raised that challenge as well to the agency. I mean, he could have said, you know, he could have issued a statement saying, I'm not, you've got the wrong guy. But again, he did not make a statement. He did not exhaust that issue. Counsel, um, counsel for, um, Mr. Vasquez, um, says that he wasn't represented in these proceedings, and he did have counsel of record. So does that bear on this at all? Right. So there are two different things in play. There is the record of sworn statement, which, you know, can serve multiple functions, right? It can support a reinstatement order. It can also support criminal proceedings. And so as a result, you have a right to counsel in there. And if you refuse, and you can refuse to make a statement to the ICE officer under that. Reinstatement's a completely different thing, because that's a civil proceeding. And under Ruiz, this court recently held that you do not have a right to counsel in your reinstatement proceedings. So, you know, his claim on that, in that regard, is foreclosed by very recent precedent of this court. Um, going to his challenge to the reinstatement regulations of this court, let me give you a break. Um, going to the challenge of the reinstatement regulations, I believe that his argument that Loper Bright opens the world up, uh, is incorrect under Loper Bright. Again, the court said that stare decisis continues to apply to court decisions under Chevron. And this court has followed that. Um, I believe it's Lopez. And unlike my colleague, who can remember names of cases very easily, um, Maria Chavez, I had to look it up. Um, that all of that forecloses this court reopening the, the sort of alignment of the asylum statute and the reinstatement statute. But if this court were to get into it, um, it should follow its prior decision, uh, finding that the reinstatement statute, I mean, you know, and find that the reinstatement statute, it, just denial of relief, um, prevents an individual from seeking asylum in removal proceeding. I mean, in, uh, I guess withholding only proceedings or administrative proceedings after a reinstatement. Uh, specifically, I, I'll just go back to one, the asylum statute itself allows the attorney general to make new exception, uh, new exceptions from eligibility. That's 1182, uh, let's see, B2B. So the attorney general could and did through the reinstatement regulations make an exception for people who are, who've been reinstated and they cannot get asylum. Two, and this has been covered by this court, um, the question as to which statement, you know, whether the asylum provision or the reinstatement provision is more authoritative. The asylum provision is more authoritative. This court previously said it's not because in addition to forms of relief like asylum, it references things like withholding of removal, um, provisions under the CAT, U visas. But we now know the provision, you know, protection claims under the CAT are not seeking relief from removal at all. They are seeking protection from removal to a particular country. They're outside of it. And U visas are unusual. Um, I think probably there's a problem with regard to one, you can seek a waiver under 1182 D, uh, D3A in the U visa context, and that gets rid of an eligibility for a visa as opposed to some form of relief. Um, so as a result, you know, we can see that relief means relief and asylum is a form of relief that is overcome. Uh, further, uh, the, the reinstatement provision is more specific, right? The asylum provision speaks generally of any alien, you know, who is a refugee, et cetera, et cetera, et cetera, regardless of status, there is that language, but any alien, um, reinstatement orders refer to a very specific subclass of alien or individuals. Um, and those are ones who have, uh, have a final order of removal and have a legally re-entry. And that's a more specific provision. So all of these things, all of these aspects of the reinstatement statute vis-a-vis statute, vis-a-vis the asylum statute, uh, require that this court find that aside, you know, that individuals who are, whose orders are reinstated are not eligible for asylum. Um, if this court has no further questions for me. Thank you. Government rests. Yes. Um, Mr. Quinones, uh, you're out of time, but I'll give you, uh, one minute to rebut. Yes, Your Honor. Uh, first, uh, with respect to whether the court can review the, uh, regulations, uh, the government cited Murillo Chavez multiple times today, uh, but that case, in that case, the court actually did exercise independent, uh, uh, determination about, uh, classical and moral turpitude, uh, and after acknowledging that it was his duty to do so under Loper, Loper Bright. Um, the government today also asserted that my client has been using different names. Those names were not, he didn't use them. Those were assigned to him by, uh, by the agency. Same with the, uh, multiple A numbers. He did not use that or invent that number himself. That was assigned to him by the agency. Uh, so that's an inaccurate statement on the government's part, uh, to accuse my client of something he has not done. Um, the other, uh, highlight again is that his application for asylum and his right to have his application for asylum was vested, uh, and this court should not allow the, uh, application of these regulations to divest him of that right. Uh, he had, uh, uh, again, he filed for asylum before, complied with the, uh, biometrics requirements, and that was all he had to do except to wait for the interview that the asylum office never gave him. Thank you, Your Honor. Thank you. Um, the case of, uh, Vasquez-Reyes versus Blanche is now submitted. I appreciate your oral argument presentations, uh, Mr. Quinones and Mr. Tennyson. The last case of Donate Cortes versus Blanche has been submitted on the briefs, so that concludes our calendar for today. Uh, thank you all very much. We are adjourned. All rise.
judges: MURGUIA, WARDLAW, SANCHEZ